UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

ROOSTER'S GRILL, INC.,
RK FOODS, LLC, REGINALD
KELLY, INDIVIDUALLY, AND
ANGELA KELLY, INDIVIDUALLY                              PLAINTIFFS


VS.                                CIVIL ACTION NO. 3:12CV757TSL-JMR


PEOPLES BANK AND
KAREN G. MILLS, IN HER OFFICIAL
CAPACITY AS ADMINISTRATOR OF THE
SMALL BUSINESS ADMINISTRATION                           DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Peoples Bank to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs Rooster's Grill, Inc., RK Foods, LLC, Reginald Kelly and Angela Kelly have responded to the motion and the court, having considered the memoranda of authorities submitted by the parties, concludes the motion is well taken and should be granted.

In 2010, Reginald Kelly and Rooster's Grill, Inc. obtained a loan from Peoples Bank (the Bank) for the purpose of opening a restaurant in Collins, Mississippi. Plaintiffs are now in default on the loan and have brought the present action alleging claims against Peoples Bank for breach of the duty of good faith and fair dealing (count I), fraudulent misrepresentation (count II), breach of contract (count III), fraudulent inducement (count IV), breach

of fiduciary relationship (count V), breach of confidential duty (count VI), negligence (count VII), and negligent misrepresentation (count VIII) relating to this loan transaction. Each of plaintiffs' claims is based on the factual premise that the Bank extended a loan to them for which they were not qualified and which they could not afford and cannot repay, and on which they are consequently now in default. Plaintiffs have additionally asserted a claim for equitable estoppel (count IX) relating to an earlier unsuccessful attempt by plaintiffs to secure a loan from the Bank. In this count, they allege that they relied to their detriment on a premature oral representation by a Bank loan officer that an earlier loan application by Rooster's had been approved but which they later learned had been denied. Plaintiffs ask that the Bank be estopped from denying the existence of a contract in regard to that earlier loan application. The Bank has moved for dismissal of all these putative claims pursuant to Rule 12(b)(6).

When faced with a Rule 12(b)(6) motion to dismiss, the court must determine whether the plaintiff has asserted a legally sufficient claim for relief. A complaint asserts a legally sufficient claim for relief if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks

and citation omitted). To meet this threshold of facial plausibility, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations omitted). In making this determination, the court is limited to the pleadings and any documents attached thereto, and must accept as true all well-pleaded facts and view them in the light most favorable to the plaintiffs. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312-13 (5th Cir. 2002). Applying this standard to the complaint herein, the court concludes that plaintiffs' allegations do not demonstrate that plaintiffs are entitled to relief. Dismissal is therefore appropriate.

According to plaintiffs' complaint, in 2009, Peoples Bank approved Reginald Kelly and RK Foods, LLC for an $83,057 small business start-up loan for the purpose of acquiring and operating a Fox's Pizza Den restaurant franchise in Collins, Mississippi. Additional loans for $150,000 and $18,763 were made thereafter for the purpose of funding that restaurant. In 2010, Kelly formed Rooster's Grill, Inc. (Rooster's) for the purpose of opening a second restaurant in Collins and applied to the Bank for another small business loan to open the restaurant. Kelly selected a site

3

for the restaurant and began negotiations with the property owner to purchase the property. Plaintiffs allege that in reliance on a representation by a Bank loan officer that the loan application was approved, the property owner evicted his existing tenant so that he could sell the property to Rooster's, and Kelly applied for a liquor license from the State and secured a covenant variation from a neighboring property owner to allow the sale and consumption of alcohol on the premises. Thereafter, however, plaintiffs learned that the loan application had not been approved because the U.S. Small Business Administration had not approved a guarantee for the loan and the Bank would not make the loan without an SBA guarantee.

Plaintiffs allege that because of the apparent denial of the loan, Kelly abandoned the idea of opening a second restaurant altogether until the owners of a local strip mall, Taylor Place, approached him in early 2011 about locating his Rooster's Grill restaurant in the strip mall. Kelly initially responded that given his previous experience with the Bank's approving and then denying his loan application, he was no longer interested in pursuing the project. However, one of the property owners was also an officer with the Bank who was familiar with Kelly's earlier failed attempt to secure a loan, and according to the complaint, this individual assured Kelly that if he agreed to

4

locate his restaurant in the Taylor Place strip mall, Rooster's' application for a small business loan would be approved.

Thus, Kelly, on behalf of Rooster's, applied to the Bank for a loan to open the restaurant in the strip mall. As before, the Bank required an SBA guarantee in order to make the loan; but this time, the SBA approved the Bank's application for a guarantee and Kelly's loan application was approved. Plaintiffs allege, though, that the SBA was induced to approve the Bank's application for a guarantee based on the Bank's misrepresentation to the SBA that neither the Bank nor any of its "associates" (including officers) had any "real or apparent conflict of interest with [Rooster's Grill]" or any "significant direct or indirect financial interest in [Rooster's Grill, Inc.]" or had "such interest within 6 months prior to the date of the application."[1] Plaintiffs allege that in fact, contrary to the Bank's representation, at the time of its

---

[1] In SBA Form 2301, Part C, the Bank certified to the SBA the truth of the following statements:

> No Lender or Associate of Lender has a real or apparent conflict of interest with Applicant, any of Applicant's Associates, or any of the close relatives of Applicant's Associates....
>
> No Lender or Associate or close relative of an Associate of the lender has a significant direct or indirect financial or other interest in the applicant, or has had such an interest within 6 months prior to the date of this application....
>
> None of the Loan proceeds will directly or indirectly finance purchase of real estate, personal property, or services from Lender or an Associate of Lender.

5

application for the SBA guarantee, the Bank had knowledge of an actual and direct conflict of interest between the applicant, Rooster's, and the Bank, as an officer of the Bank was a co-owner and developer of the strip mall at which Kelly and Rooster's had agreed to lease space and open the restaurant for business. Plaintiffs allege that as a result of the Bank's misrepresentation to the SBA as to the nonexistence of a conflict of interest, the SBA was induced to approve a small business guarantee[2] and in turn, the Bank approved Rooster's' loan application and the loan was executed, secured by Reginald Kelly's personal guarantee and a deed of trust on twenty-two acres of property owned by Reginald and Angela Kelly. Subsequent to the loan closing, Rooster's leased space in the Taylor Place strip mall and the restaurant was opened. However, according to the complaint, the restaurant has not done well and has suffered financial difficulties since its opening, as a result of which Rooster's is currently in default on the loan.

As grounds for each of counts I through VIII in their complaint, plaintiffs allege the following: that the Bank would not approve Rooster's' loan application unless the Bank could

---

[2] Although the complaint refers to the SBA's approval of a "small business loan and guaranty," the documents attached as exhibits to the complaint reflect that the SBA approved only the Bank's application for a *guarant*ee and the Bank, in turn, approved Rooster's' application for a *loan*. There was no loan from the SBA to Rooster's or SBA approval of Rooster's' loan from the Bank.

6

obtain an SBA guarantee for the loan; that the Bank could only obtain an SBA guarantee for the loan if it certified the nonexistence of any conflict of interest between the Bank and the prospective borrower; that the Bank was aware that a conflict of interest in fact existed, which rendered the proposed loan ineligible for an SBA guarantee; that the Bank nevertheless misrepresented to the SBA that there was no conflict of interest; and that as a result, the SBA approved the Bank's application for a guarantee and the Bank, in turn, approved Rooster's' loan application. In addition to alleging that the Bank's misrepresentation to the SBA made it possible for them to obtain the loan, plaintiffs allege that the Bank falsely represented to Kelly/Rooster's that Rooster's was eligible for an SBA-guaranteed loan and thereby "intentionally created a false impression in [Kelly's] mind that he would be able to afford the loan ultimately approved," and that this induced Kelly/Rooster's to enter into a loan agreement with the Bank. According to plaintiffs, had they known the loan for which Kelly/Rooster's had applied was not eligible for an SBA guarantee, they would not have entered the loan agreement and thus would not have suffered the resulting financial harm.

To the extent plaintiffs' claims may be based on an allegation that the Bank's misrepresentation to the SBA provides a basis for the SBA to void its guarantee for the loan, plaintiffs'

7

allegations do not support their claims for relief.  To understand
why, one need only consider the purpose of an SBA guarantee in an
SBA-guaranteed loan.  Unlike a direct SBA loan or an immediate
participation loan by a lender and the SBA, an SBA-guaranteed loan
is one in which the SBA is not a lender but rather guarantees a
portion of a loan made by a lender.  See 13 C.F.R. §§ 120.2(a).[3]
The SBA guarantee program is designed to provide protection for
lenders and thereby encourage private lending to small businesses.
Under the terms of a statutory SBA guarantee, the SBA does not act
as a surety or guarantor for the small business borrower.  Rather,
once a borrower on an SBA-guaranteed loan has been in default for
more than sixty days, then upon demand by the lender, after all
business personal property securing the defaulted loan has been
liquidated, the SBA is required to purchase its guaranteed portion
of the outstanding balance.  Id. § 120.520(a)(1).  It may then
pursue the borrower (including any security) for the outstanding
balance of the loan.  An SBA guarantee does not release the
borrower from its indebtedness; it simply changes who enforces the

---

[3] As explained in 13 C.F.R. § 120.2(a)(2):
A guaranteed loan is initiated by a Lender agreeing to
make an SBA guaranteed loan to a small business and
applying to SBA for SBA's guarantee under a blanket
guarantee agreement (participation agreement) between
SBA and the Lender.  If SBA agrees to guarantee
(authorizes) a portion of the loan, the Lender funds and
services the loan.  If the small business defaults on
the loan, SBA's guarantee requires SBA to purchase its
portion of the outstanding balance, upon demand by the
Lender and subject to specific conditions....

8

debt.  Id.  See also BancOhio Nat. Bank v. Small Business Admin., No. 86-3470, 1987 WL 37611, 2 (6th Cir. 1987) (explaining that existence of SBA guarantee would not help borrower in event of default because "if SBA purchases a loan they then stand in the shoes of the bank with all the security and guarantees originally provided running to them.  Thus, [the borrower] would merely find himself being sued by the SBA instead of the bank.").

It appears, however, that plaintiffs' real claim, at bottom, is that their very indebtedness was caused by the Bank's alleged misrepresentation to the SBA because the SBA would not have provided the guarantee but for the misrepresentation; the Bank, in turn, would not have made the loan but for the SBA guarantee; and they would not have become indebted to the Bank and would not now be in default on the loan and at risk of losing their property that was pledged as collateral for the loan.  But as the Bank correctly points out, a guarantee that was not intended for plaintiffs' protection could not possibly have proximately caused plaintiffs any cognizable harm.[4]  Even assuming the Bank would not have made the loan without the SBA guarantee, the fact is, Kelly/Rooster's voluntarily made application for a loan from the

---

[4] The court notes that the Bank denies that any misrepresentation was made to the SBA at the time of its application for the loan guarantee, since as of the date of the application, Rooster's had not entered into the lease agreement with the owners of Taylor Place.  However, for present purposes, the court will assume that a conflict existed and that the Bank thus misrepresented that there was no existing conflict of interest.

9

Bank and got what they desired. That the Bank sought and obtained an SBA guarantee to provide added protection for the Bank's benefit in connection with the loan did not alter the fundamental nature of the loan transaction *between the Bank and Rooster's*. In short, Kelly/Rooster's obtained what they sought by their own free will: a loan to open a restaurant. And as the Bank aptly notes, their regret in securing a loan that they are now unable to repay does not translate into a legally cognizable claim. For these reasons, counts I through VIII do not state any cognizable claim for relief and will be dismissed.

In count IX, relating to Kelly/Rooster's' first loan application to the Bank, plaintiffs allege that they detrimentally relied on a Bank loan officer's premature oral representation that Kelly/Rooster's' loan application had been approved by seeking a permit from the State of Mississippi to sell beer at the proposed Rooster's restaurant and by seeking and obtaining a private covenant variation to sell beer on a certain parcel of real property on which they intended to locate the proposed restaurant. Plaintiffs ask on these facts that the Bank be estopped from denying the existence of a contract in regard to that earlier loan application.

The elements required for equitable estoppel are "(1) belief and reliance on some representation; (2) a change of position as a result thereof; and (3) detriment or prejudice caused by the

10

change of position." B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 492 (Miss. 2005). The Mississippi Supreme Court has made clear that equitable estoppel

> is an extraordinary remedy and should be applied cautiously and only when equity clearly requires it to prevent unconscionable results. B.C. Rogers Poultry, Inc. v. Wedgeworth, 911 So. 2d 483, 491 (Miss. 2005). It is to be applied only in "exceptional circumstances and must be based on public policy, fair dealing, good faith, and reasonableness." Powell v. Campbell, 912 So.2d 978, 982 (Miss. 2005); Windham v. Latco of Miss., Inc., 972 So. 2d 608, 612 (Miss. 2008). "[T]he principle giving rise to the remedy of equitable estoppel is that a wrongdoer is not entitled to enjoy the fruits of his fraud." Windham, 972 So. 2d at 611.

Long Meadow Homeowners' Ass'n, Inc. v. Harland, 89 So. 3d 573, 577 (Miss. 2012). See also First Investors Corp. v. Rayner, 738 So. 2d 228, 233 (Miss. 1999) (describing equitable estoppel as a "shield and not a sword"). The test for estoppel is "whether it would be substantially unfair to allow a person to deny what he has previously induced another to believe and take action on." First Investors Corp. v. Rayner, 738 So. 2d 228, 233-34 (Miss. 1999) (internal citations omitted). "A person will be subject to estoppel 'if his acts, admissions, or representations were intended or calculated, or might be reasonably expected, to influence the conduct of another, and does so influence his conduct, and he would be prejudiced if the acts and admissions were allowed to be retracted.'" Long Meadow Homeowners' Ass'n, 89 So. 3d at 580 (quoting Staton v. Bryant, 55 Miss. 261, 267 (1877)).

11

It should be noted, first, that plaintiffs' claim for equitable estoppel is nonsensical when considered in the context of the rest of their complaint. By counts I through VIII, plaintiffs seek to invalidate the loan they actually obtained from the Bank (the second loan), yet in count IX, they seek to enforce the (first) loan which they failed to obtain. As the Bank notes, plaintiffs' claims are thus internally inconsistent and self-defeating: If the Bank were estopped to deny the existence of the first loan for which Kelly/Rooster's applied, plaintiffs would still be indebted to the Bank – which is precisely what they seek to avoid by the numerous claims that comprise the remainder of their complaint.

In any event, plaintiffs have not sufficiently alleged the elements of their claim of equitable estoppel. Although plaintiffs allege they relied to their detriment on the representation that the first loan application had been approved, the only detriment plaintiffs claim derives from having taken steps that would have allowed beer to be sold at a freestanding Rooster's restaurant on a certain parcel of real property located in Collins. In the court's opinion, merely applying for a beer permit and obtaining a covenant variance, which involved no cost to plaintiffs, is not sufficient detriment or prejudice to warrant the extraordinary remedy of equitable estoppel. Cf. Eagle Management, LLC v. Parks, 938 So. 2d 899, 904 (Miss. Ct. App.

2006) (finding that plaintiff failed to state claim for equitable estoppel because he failed to allege that he suffered any damages as a result of the defendant's allegedly untrue representations).

Based on all of the foregoing, the court concludes that the Bank's motion to dismiss the complaint against it is well taken and will therefore be granted. Plaintiffs have also sued the SBA in this cause, seeking in count X of their complaint a declaration that the SBA would not have approved the guarantee application but for the Bank's misrepresentations and a further declaration that the SBA is within its rights to declare the guarantee voidable based on the Bank's misrepresentations. Among several bases suggested by the Bank for finding the complaint states no viable claim against the SBA is its assertion that plaintiffs lack standing as they do not, at this time, have an actual controversy in which they are adverse to the SBA and cannot assert the SBA's rights on its behalf. See 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2757 (3d ed. 1998) (discussing requirement of standing); Danos v. Jones, 652 F.3d 577, 582-83 (5th Cir. 2011) (stating that "[e]ven where Article III standing requirements are satisfied, prudential considerations require that a party 'generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties'") (quoting Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975)). The

court agrees and concludes that the complaint against the SBA is due to be dismissed.[5]

Accordingly, it is ordered that plaintiffs' complaint in this cause is dismissed with prejudice.

SO ORDERED this 11th day of April, 2013.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[5] Although the SBA has not moved for dismissal, the court may grant such relief *sua sponte*. See Lozano v. Ocwen Federal Bank, FSB, 489 F.3d 636, 642 (5th Cir. 2007) (recognizing that "district court is 'authorized to consider the sufficiency of the complaint on its own initiative'") (quoting Guthrie v. Tifco Indus., 941 F.2d 374, 379 (5th Cir. 1991)).

14